AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

FILED

SEP 1 3 2019

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                          DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Apple iPhone 7<br>Model No. MN9U2LL/A<br>IMEI: 355325088878253 (Target Phone) | )<br>)<br>)  Case No.<br>)<br>)<br>) |

'19 MJ 3952

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A (incorporated herein)

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B (incorporated herein)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 952 and 960 | Importation of a Controlled Substance |

The application is based on these facts:

See attached Affidavit (incorporated herein)

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Cristian Saenz, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/13/19

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Karen S. Crawford United States Magistrate Judge
*Printed name and title*

1

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

2    I, Cristian M. Saenz, Special Agent with the Department of Homeland Security

3  (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations

4  (HSI) being duly sworn, depose and state as follows:

5

### INTRODUCTION

6    1.    I make this affidavit in support of an application for search warrant in

7  furtherance of a narcotics smuggling investigation conducted by HSI Special Agents for

8  the following target property: one cellular phone.

9                      (1) Apple iPhone 7
                       Model No. MN9U2LL/A
10                     IMEI: 355325088878253
                       (the **Target Phone**).
11

12    2.    The **Target Phone** was seized on August 24, 2019, from Ronald Dewayne

13  MC DONALD Jr., at the San Ysidro Port of Entry, San Diego, California when he entered

14  the United States from Mexico.  It is believed that the **Target Phone** was used by MC

15  DONALD to communicate with co-conspirators during a drug smuggling event on that

16  same date.  On that date, MC DONALD was arrested after driving his vehicle that was

17  found to have approximately 11.84 kilograms (26.10 pounds) of cocaine concealed in the

18  rear quarter panels of the vehicle.  The **Target Phone** is currently in the possession of the

19  DHS and is presently being stored at 880 Front Street, Suite 3200, San Diego, California,

20  92101.

21    3.    Probable cause exists to believe that the **Target Phone** contains evidence

22  relating to violations of Title 21, United States Code Sections 952/960 (Importation of a

23  Controlled Substance).

24    4.    Based upon my experience and training, and all the facts and opinions set forth

25  in this Affidavit, I believe the items to be seized set forth in Attachment B will be found in

26  the items to be searched as described in Attachment A.  These items may be or lead to

27  evidence of the violations described above.

28

**TRAINING AND EXPERIENCE**

5.     I am a "law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am a Special Agent with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed in my current position with HSI since 2017. I have completed the Criminal Investigator Training Program and the HSI Special Agent Training Program, both of which were completed at the Federal Law Enforcement Training Center (FLETC). I am currently assigned to the Office of the Special Agent in Charge, San Diego, California ("SAC SD") and primarily investigate violations of law pertaining to child pornography and child exploitation. However, I am cross-designated and have the authority to conduct Title 21 investigations and enforcement activities. I have been involved with investigations for Title 21 offenses and am familiar with the Interagency Cooperation Agreement between the U.S. Drug Enforcement Administration and ICE.

6.     Prior to working with HSI, I was employed as a Special Agent with the Department of the Navy, Naval Criminal Investigative Service ("NCIS") from 2015 to 2017. During my tenure as a NCIS SA, I participated in numerous narcotics investigations, in and around the San Bernardino County area. These investigations and arrests involved: possession with intent to distribute and distribution of narcotics including, but not limited to, methamphetamine, cocaine, and methylenedioxymethamphetamine (commonly referred to as "MDMA"). These investigations have involved debriefing defendants, witnesses and informants, conducting surveillance, executing search warrants, seizing narcotics and making arrests for narcotics-related offenses.

7.     I have worked and consulted with numerous agents and other law enforcement officers who have investigated drug distribution and trafficking throughout the United States. I have conducted investigations and/or participated in investigations related to the unlawful importation and distribution of controlled substances. From my training,

2

experience, and knowledge of this investigation, I have become familiar with the techniques and methods used by large Mexico-based illegal drug trafficking organizations to smuggle, transport, and distribute illegal drugs, as well as methods used to collect, smuggle, and launder illegal drug proceeds.

8.     Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone.

9.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a.    Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, social networking sites, and voice messages.

    b.    Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

    c.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

3

d.      Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.      Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

f.      Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

g.      Searches of cellular phones may identify travel to or presence at locations involved in the importation of cocaine, or some other controlled substances from Mexico into the United States, or possession and/or transportation with intent to distribute cocaine or controlled substances within the United States.

10.     Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages.  Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11.     The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience.  All the dates, times, and amounts listed in this affidavit are approximate.

1  Because this affidavit is submitted for the limited purpose of establishing probable cause
2  in support of the application for search warrants, it does not set forth each and every fact
3  that I or others have learned during the course of this investigation.

**FACTS IN SUPPORT OF PROBABLE CAUSE**

5      12.    On August 24, 2019, at approximately 9:20 AM, MC DONALD, a United
6  States citizen, applied for entry into the United States from Mexico through the San Ysidro
7  Port of Entry in vehicle lane #21.  MC DONALD was the driver, sole occupant, and
8  registered owner of a 2009 Chevrolet HHR ("the vehicle") bearing California license
9  plates.

10     13.    A Canine Enforcement Team was conducting pre-primary operations when
11 the Human and Narcotic Detection Dog alerted to underneath the rear driver side of the
12 vehicle.

13     14.    A Customs and Border Protection Officer ("CBPO") received two negative
14 Customs declarations from MC DONALD. MC DONALD stated he was crossing the
15 border to go to San Diego, California.  MC DONALD and the vehicle were referred to
16 secondary inspection.

17     15.    A CBPO operating the Z-Portal X-Ray machine detected anomalies in the rear
18 quarter panels of the vehicle.

19     16.    Further inspection of the vehicle by a CBPO resulted in the discovery of 10
20 packages concealed in the rear quarter panels of the vehicle, with a total approximate
21 weight of 11.84 kilograms (26.10 pounds).  A sample of the substance contained within
22 the packages field tested positive for the characteristics of cocaine.

23     17.    A CBPO placed MC DONALD under arrest for the importation of controlled
24 substances in violation of Title 21, United States Code, Sections 952/960.  A CBPO then
25 seized the tan 2009 Chevrolet HHR, the cocaine, the **Target Phone,** and personal effects.

26     18.    Following the arrest, MC DONALD was advised of his *Miranda* rights by
27 HSI SA Saenz. Post-*Miranda*, MC DONALD admitted to smuggling what he thought was
28 likely marijuana in the vehicle, for which he was he was to be paid $2,000 USD.  HSI SA

1  Saenz presented the **Target Phone** to MC DONALD and asked MC DONALD if he owned
2  the **Target Phone**, to which MC DONALD responded in the affirmative.  MC DONALD
3  stated he utilized the **Target Phone** to communicate via voice calls and text messages with
4  a person only known to him as "Mundo."  MC DONALD stated he made an agreement
5  with Mundo to smuggle narcotics into the United States from Mexico.  MC DONALD
6  stated he likely deleted evidence of communication with Mundo from the **Target Phone**.

7      19.    During the interview of MC DONALD, SA Saenz conducted a manual search
8  of the **Target Phone** as per MC DONALD's written consent.  SA Saenz searched only the
9  **Target Phone**'s call log history and text message history; however, evidence of
10  communication between MC DONALD and Mundo was not identified which is consistent
11  with MC DONALD'S statement indicating he likely deleted evidence of such
12  communication.  No additional data on the **Target Phone** was reviewed by SA Saenz.

13      20.    MC DONALD was arrested and referred for prosecution for the Importation
14  of a Controlled Substance in case 19-MJ-3606-AGS.  MC DONALD made his initial
15  appearance on August 26, 2019; MC DONALD remains in custody.  A bond for MC
16  DONALD was set to $25,000 personal security bond secured by one financially
17  responsible and related adult and a $2500 cash deposit.  A preliminary hearing was
18  scheduled to be conducted on September 5, 2019; however, a defense oral motion to
19  continue the hearing was granted, and the preliminary hearing was continued to the
20  arraignment date of September 19, 2019.

21      21.    Based on my experience and training, consultation with other law
22  enforcement officers experienced in narcotics trafficking investigations, and all the facts
23  and opinions set forth in this affidavit, I believe that information relevant to the narcotics
24  smuggling activities of MC DONALD and his co-conspirators, such as telephone numbers,
25  made and received calls, contact names, electronic mail (email) addresses, appointment
26  dates, email messages, messages and posts from social networking sites like Facebook,
27  pictures, location data, and other digital information are stored in the memory of the
28  cellular telephone described herein.  Furthermore, I know from consulting with HSI

6

1  Computer Forensics Agents, that data that has been deleted from a cellular phone can be
2  recovered during the process of a forensic analysis of a cellular phone.

3

4                              **SEARCH METHODOLOGY**

5        22.    It is not possible to determine, merely by knowing the cellular telephone's
6  make, model and serial number, the nature and types of services to which the device is
7  subscribed and the nature of the data stored on the device.  Cellular devices today can be
8  simple cellular telephones and text message devices, can include cameras, can serve as
9  personal digital assistants and have functions such as calendars and full address books and
10  can be mini-computers allowing for electronic mail services, web services and rudimentary
11  word processing.  An increasing number of cellular service providers now allow for their
12  subscribers to access their device over the internet and remotely destroy all of the data
13  contained on the device.  For that reason, the device may only be powered in a secure
14  environment or, if possible, started in "flight mode" which disables access to the network.
15  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
16  equivalents and store information in volatile memory within the device or in memory cards
17  inserted into the device. Current technology provides some solutions for acquiring some of
18  the data stored in some cellular telephone models using forensic hardware and software.
19  Even if some of the stored information on the device may be acquired forensically, not all
20  of the data subject to seizure may be so acquired.  For devices that are not subject to forensic
21  data acquisition or that have potentially relevant data stored that is not subject to such
22  acquisition, the examiner must inspect the device manually and record the process and the
23  results using digital photography.  This process is time and labor intensive and may take
24  weeks or longer.

25        23.    Following the issuance of this warrant, I will collect the subject cellular
26  telephone and subject it to analysis.  All forensic analysis of the data contained within the
27  telephone and its memory cards will employ search protocols directed exclusively to the
28  identification and extraction of data within the scope of this .

24.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

25.     The United Stated conducted a manual consent search of the **Target Phone** on August 24, 2019.[1] Evidence of communication between MC DONALD and Mundo was not identified.

26.     Prior to adding the further information detailed in paragraphs 8, 9(g), 19, 21 and footnote 1, the United States previously sought a federal search warrant authorizing the search of the **Target Phone** on September 11, 2019. The warrant was rejected by United States Magistrate Judge Jill L. Burkhardt.

## CONCLUSION

27.     Based on all of the facts and circumstances described above, there is probable cause to conclude that MC DONALD used the **Target Phone** to facilitate the offense of importing of a controlled substance. The **Target Phone** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952/960.

28.     Because the **Target Phone** was seized during the commission of the offense and has been stored in a secure location, there is probable cause to believe that evidence of illegal activity committed by MC DONALD continues to exist on the **Target Phone**.

---

[1] Nothing obtained in the manual search of the **Target Phone** is being relied upon in seeking this warrant. This information is provided for the purpose of full disclosure. I ask the Court not to consider this information in making its probable cause determination whether to authorize the requested search and seizure warrant. It is possible for deleted data to be extracted from a cellular telephone during a forensic analysis of the cellular phone.

29.     Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B are likely to be found in the property to be searched described in Attachment A. Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.


CRISTIAN M. SAENZ
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this _13th_ day of September 2019.


HON. KAREN S. CRAWFORD
United States Magistrate Judge

9

1

## **Attachment A**

2

### **PROPERTY TO BE SEARCHED**

3

The item to be searched is as follows:

4

       (1)  Apple iPhone 7

5

            Model No. MN9U2LL/A
            IMEI: 355325088878253

6

            (the **Target Phone**)

7

The **Target Phone** is currently in the possession of the Department of Homeland Security

8

and is being held as evidence in the Southern District of California.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## ATTACHMENT B
## ITEMS TO BE SEIZED

Authorization to search the cellular phone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular phone. The seizure and search of the cellular phone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular phone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period from August 1, 2019 to and including August 25, 2019:

a. tending to identify attempts to import cocaine, or some other controlled substance from Mexico and distribute the controlled substance in the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the smuggling and distribution of cocaine, or some other controlled substance from Mexico into, and through, the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling and distribution of cocaine or some other controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the smuggling and distribution of cocaine or some other controlled substance, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.

The seizure and search of the cellular phone shall follow the procedures outlined in the supporting affidavit.  Deleted data, remnant data, slack space, and temporary and permanent files on the cellular phone may be searched for the evidence above.